UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Antonio Kinloch, # 219914, | ) C/A No. 2:15-1742-MBS-MGB |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Report and Recommendation |
| | ) |
| South Carolina Department of Corrections, | ) |
| | ) |
| Defendant. | ) |

The plaintiff is an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections. The South Carolina Department of Corrections website (http://public.doc.state.sc.us/scdc-public/, last visited on Apr. 23, 2015) indicates that the plaintiff is serving a life sentence for a murder conviction entered in the Court of General Sessions for Charleston County in Indictment No. 94-GS-10-3523.

The plaintiff has brought suit against the South Carolina Department of Corrections (SCDC). On page 2 of the complaint, the plaintiff states that this civil rights action concerns "cruel and unusual punishment" and deliberate indifference (doc. 1 at 2). The plaintiff also indicates that he filed grievances from "4-22-2013 thru 3-2015" (*id*.).

In the "STATEMENT OF CLAIM" portion of the complaint, the plaintiff alleges or contends: (1) at all relevant times in this case, the plaintiff, a South Carolina resident, has been in the care, control, and custody of the SCDC (*id*. at 5); (2) the acts and omissions at issue in this took place in Dorchester County and in Greenville County (*id*.);

(3) at all relevant times "Defendants" were under statutory and "common" duties to provide reasonable and adequate health care and were aware that "potentially life threatening and permanently disabling consequences could result from a breach of aforesaid duties (*id*.); (4) "Defendant" at all relevant times employed physicians, nurses, guards, and other persons for addressing medical, health, and safety concerns at the Lieber Correctional Institution and the Perry Correctional Institution (*id*.); (5) on April 18, 2013, the plaintiff entered the cafeteria at the Lieber Correctional Institution and saw Sgt. Myers watching him in a way that scared the plaintiff (*id*.): (6) while the plaintiff was eating, Sgt. Myers continued to watch the plaintiff, who was wearing "darkshades" to protect his eyes (*id*. at 6); (7) the plaintiff wears "darkshades" because he lost some of the "lens" on his eyes and has Graves Disease (*id*.); (8) the plaintiff ate fast because Sgt. Myers was moving toward him in a very "strange way" (*id*.); (9) as the plaintiff went to dump his tray, Sgt. Myers bumped him (*id*.); (10) the plaintiff stepped out of the cafeteria still eating his cake, when he encountered the contraband team (*id*.); (11) officer Lopez told the plaintiff to go back and eat his cake (*id*.); (12) all of a sudden, Sgt. Myers rushed the plaintiff, pursued him, picked up the plaintiff "under both arms" and slammed the plaintiff onto the cement floor repeatedly, but none of the officers "around" did anything to stop Sgt. Myers (*id*. at 7); (13) the plaintiff attempted to break free but the plaintiff could not do so because Sgt. Myers was taller and bigger (*id*. at 8); (14) Sgt. Myers then beat the plaintiff while the contraband team held the plaintiff; (15) when the plaintiff asked the contraband team why they were letting Sgt. Myers beat him up, they told the plaintiff to keep still and Ms. Lopez threatened

to mace the plaintiff; (16) after the plaintiff was beaten up, the plaintiff was handcuffed, taken to the holding cell, and later taken to medical, where the plaintiff "was only treated minorly [*sic*]" (*id.*); (17) the plaintiff was returned to his mental health dorm and later taken to a "very violent" dorm, which was on lock-down (*id.* at 9); (18) the plaintiff wrote to Investigator Trey, who said that he would check the camera (*id.*); (19) the investigator called the plaintiff back into his office and took pictures of the plaintiff's injuries; (20) about a week or two later, Sgt. Myers "was gone" and the *Post and Courier* of Charleston "read, 'That Sgt. Myers had resign for beating up an inmate'" (*id.*); (21) the plaintiff suffered many injuries to his eyes, left thumb, and body, and later had surgery on his eyes on or about November 20, 2013 (*id.*); (22) the acts and omissions" of the "Defendants" was the direct and proximate cause of the plaintiff's serious injury, constituted cruel and unusual punishment, and caused the plaintiff physical and emotional injuries (*id.* at 10); (23) the actions of Sgt. Myers and the contraband team were not justified (*id.*); (24) the plaintiff will show that the Perry Correctional Institution is being grossly negligent and deliberately indifferent, and is inflicting cruel and unusual punishment (*id.*); (25) the plaintiff's grievances and documentary evidence are what lead to the incident with Sgt. Myers (*id.* at 11); (26) conditions at the Ashley A-9 dorm, where the plaintiff received cold meals and one shower a week, were unbearable and not normal (*id.*); (27) the plaintiff needs medications for his eyes, but his eye medication has been reduced from seven tubes a month to two tubes a month (*id.* at 12); (28) the plaintiff has requested thyroid medicine, but his thyroid medicine was stopped and resulted in the cancellation of scheduled surgery

(*id*. at 13); (29) the plaintiff complained about his mental health counselor and sought a new counselor, but this request was denied by the mental health supervisor (*id*.); (30) the plaintiff has not been allowed to receive new "darkshades," and the plaintiff was forced to throw them away or donate them (*id*. at 14); (31) the plaintiff was placed in disciplinary detention after being refused protective custody (*id*. at 15); (32) when the plaintiff was transferred from the Lieber Correctional Institution to the Perry Correctional Institution, everything was inventoried in his green duffle bag (*id*. at 15–16); (33) upon arrival at the Perry Correctional Institution, the plaintiff was placed in a unit with bright lights, and charged with possession of marijuana and narcotics (*id*. at 17); (34) the plaintiff was threatened by groups that had attacked him at other prisons, so he requested protective custody at the Perry Correctional Institution (*id*.); (35) the bright lights became unbearable to the plaintiff and, after receiving no help from the mental health counselor, the plaintiff received tape and patches for his Graves Disease (*id*. at 18); (36) the plaintiff began to receive cold meals and was told to stand in his boxers before he could take a shower (*id*.); (37) the plaintiff's medical and mental health conditions are still serious (*id*.); (38) the plaintiff was prescribed two medications for his severe stomach pain and two medications for his blood pressure (*id*. at 19); (39) the plaintiff has written to numerous SCDC officials or employees but has received no help (*id*. at 18–19); (40) the plaintiff complained when he was moved from his "court-run cell" to a cell "in bad situations and conditions" (*id*. at 20); (41) the plaintiff complained about his move into a two-man cell, but was informed that he would be placed in the cell and gassed if he refused (*id*. at 21); (41) the plaintiff wrote

to the Warden, Associate Warden, and others for help with respect to a two-man cell and eye problems, but no one responded or did anything to help the plaintiff (*id*.); (42) the plaintiff was moved several more times within the Perry Correctional Institution and was later moved to the Lee Correctional Institution (*id*. at 22–23); (43) the plaintiff's tubes of eye medicine were not supposed to have been reduced, according to Dr. Andrew Elseman (*id*. at 23); (44) the plaintiff was stabbed at the Lee Correctional Institution on April 3, 2003, but was moved back to the Lee Correctional Institution in 2015 (*id*. at 24); and (45) the "defendants" were acting under color of state law to deny the plaintiff his Eighth and Fourteenth Amendment rights (*id*.). In his prayer for relief, the plaintiff seeks judgment on all causes of action with awards of actual and punitive damages, attorney's fees, "mental health issues and any other medical issues along with such other relief as the court and Jury may deem just and proper." (*id*. at 25).

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 90–95 (2007)(*per curiam*). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 554 (D.S.C. 2008). Even under this less stringent standard, the complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading

to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

In the above-captioned case, the plaintiff has brought suit against the South Carolina Department of Corrections (doc. 1 at 1[caption] and at 2 [party information section]). The South Carolina Department of Corrections is immune from suit under the Eleventh Amendment, which divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a state agency or department. *See, e.g., Fed. Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 744–45 (2002); *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001); *and Belcher v. South Carolina Bd. of Corr.*, 460 F. Supp. 805, 808–09 (D.S.C. 1978); and *Simmons v. South Carolina State Highway Dep't*, 195 F. Supp. 516, 517 (E.D.S.C. 1961).

Liability under 42 U.S.C. § 1983 may not be imposed upon the South Carolina Department of Corrections for the actions of its officials or employees, including Sgt. Myers. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability."), which cites *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 927–29 (4th Cir. 1977).

The plaintiff cannot receive attorney's fees in this case. *See, e.g., Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (*pro se* litigant, even if he or she is an attorney, cannot receive attorney's fees in a civil rights action).

Based on the foregoing, it is recommended that the district court summarily dismiss the above-captioned case *without prejudice* and without service of process. The plaintiff's attention is directed to the Notice on the next page.

May 7, 2015  
Charleston, South Carolina

_____  
MARY GORDON BAKER  
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).